UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL A. HOLMBERG,<br><br>    Plaintiff,<br><br>    v.<br><br>RONALD VAN BOENING, et al.,<br><br>    Defendants. | CASE NO. C10-5367BHS<br><br>ORDER ADOPTING REPORT AND RECOMMENDATIONS |

This matter comes before the Court on the Report and Recommendations ("R&Rs") of the Honorable Karen L. Strombom, United States Magistrate Judge (Dkts. 38 & 39), Defendant Paul Drago's ("Drago") objections to one R&R (Dkt. 40), and Plaintiff Michael Holmberg's ("Holmberg") objection to one R&R (Dkt. 41). The Court has reviewed the R&Rs, the parties' objections, and the remainder of the file and hereby adopts the R&Rs for the reasons stated herein.

## I. PROCEDURAL HISTORY

On June 10, 2010, Holmberg filed a civil rights complaint against Defendants Ronald Van Boening ("Van Boening"), Daniel Fitzpatrick ("Fitzpatrick"), and Drago. Dkt. 5. On February 14, 2011, Holmberg filed an amended complaint adding Defendants Mark Keller ("Keller") and Debra Lavagnino ("Lavagnino"). Dkt. 17.

On August 18, 2011, Defendants Drago, Fitzpatrick, Keller, and Van Boening filed a motion for summary judgment. Dkt. 32. On November 30, 2011, Judge Strombom issued two R&Rs. The first recommended that the Court grant the motion for summary judgment as to Fitzpatrick, Keller, and Van Boening but deny the motion as to Drago. Dkt. 38. On December 9, 2011, Drago filed an objection to the R&R. Dkt. 40. On

ORDER - 1

1  December 20, 2011, Holmberg responded to Drago's objections and objected to the

2  portion of the R&R regarding his claim against Keller. Dkt. 41. On December 27, 2011,

3  Drago replied. Dkt. 42.

4      The second R&R recommended that the Court dismiss Holmberg's claim against

5  Lavagnino for failure to prosecute. Dkt. 39.

## II.  FACTUAL BACKGROUND

    Holmberg's claims against Drago and Keller are based on an infraction that Drago issued against Holmberg. The relevant facts set forth in the R&R are as follows:

> Mr. Holmberg had been working as a Clerk/Teaching Assistant with Debra Lavagnino, an ABE/GED instructor at the Pierce College Extended Learning Center at McNeil Island Correctional Center (MICC). *See*, ECF No. 17 at 40. According to an evaluation drafted by Ms. Lavagnino but not sent to Mr. Holmberg, Mr. Holmberg's performance from September 30, 2007 through December 31, 2008 had been superior. *Id*. On April 22, 2009 Ms. Lavagnino met with Mr. Holmberg to explain that he could not do anymore work at her computer work station and asked whether he understood. He stated that he did understand. Corrections Officer Paul Drago interrupted them. According to Mr. Holmberg, Officer Drago was agitated and he asked Ms. Lavignano why she had started the discussion without him. ECF No. 17 at 54. Mr. Holmberg asked why Officer Drago had to be present. Ms. Lavagnino said that it had been arranged that way.
> 
>     Mr. Holmberg asserts that Officer Drago was disrespectful and aggressive toward him from the beginning of the meeting, continually asking him whether he understood what he was being told. Mr. Holmberg states that this left him confused. Officer Drago then stated that they should move to the officer's station so that Ms. Lavagnino could repeat what she had told Mr. Holmberg in front of witnesses. ECF No. 17 at 54-55. Mr. Holmberg repeated that he understood what he had been told and asked why Officer Drago continued to ask the same question. Officer Drago then told other inmates in the area to leave and suggested that the conversation be moved to another room. When Mr. Holmberg said he would prefer to have witnesses present, Officer Drago asked Mr. Holmberg if he was refusing a direct order and why he didn't trust him. *Id*. at 55.
> 
>     Mr. Holmberg responded, "[y]ou're setting me up, I know how you guys operate. I'm a litigator – I have three lawsuits against this administration for violating my rights." *Id*. According to Mr. Holmberg, Officer Drago then insisted that Ms. Lavagnino repeat what she told him in the hallway so that Mr. Holmberg could again confirm that he understood, and when he asked Offficer Drago why he was so agitated and why he was insistent on continuing this situation after Ms. Lavagnino had already answered his question:

ORDER - 2

> …CO Drago then looked at me and said did you understand what she said. I said that I had. CO Drago then repeated the question, yelling – insisting that I answer him.
>    I informed CO Drago that I'd already answered his question three times, telling him to lower his voice – asking him if he was trying to provoke me.
>    Ms. Lavagnino then informed CO Drago that he was unnecessarily raising his voice.
>    I said thank you. She said you were increasing you [sic] volume as well. I agreed, explaining it was necessary in order to be heard over CO Drago.
>    I felt, due to his aggressive and disrespectful demeanor that he was intentionally attempting to incite me – pushing me into making some mistake.

ECF No. 17 at 56.

Immediately after returning to the classroom, Officer Drago informed Mr. Holmberg that he was "layed-in" because it was clear that he was upset. Mr. Holmberg stated he was not upset, he was confused. ECF No. 17 at 57. Mr. Holmberg asked for a shift sergeant or shift lieutenant to be called and Officer Drago replied that this would not happen and that Mr. Holmberg was to return to his unit. *Id*.

On the same day, Officer Drago issued a Rule 663 (using physical force, intimidation or coercion against any person) rule violation against Mr. Holmberg. A copy of the infraction is attached to Mr. Holmberg's amended complaint (ECF No. 17 at 46 (Attach. A)), and to the Declaration of Defendant Mark Keller, who reviewed the infraction on April 22, 2009. ECF No. 32-1 at 2 (Declaration of Mark Keller). At that time, Lt. Keller was a Correctional Lieutenant at MICC and one of his duties was to review serious infractions using a standardized checklist. *Id*. and Attach. B. In the narrative portion of the infraction report, Officer Drago sets forth a somewhat different version of what happened during his conversation with Mr. Holmberg:

> At 1845 hrs I saw Miss Lavagnino talking to I/M Holmberg in the hallway. I want to see if there was a problem [ ] Miss Lavagnino was discussing the do's and don't of a T.A. and his job. I/M Holmberg became agitated that I was standing there. We all went out by the desk to listen, but other inmates were walking by, so I suggested we go into room 220 away from the other inmates. Holmberg was saying "I don't trust you" and "you are setting me up". Also he said "I want witnesses." I explained to him we were just talking to him so relax. He then said "I'm a Litigator and have three lawsuits pending." I felt intimidated by his statement.

ECF No. 32-1 (Attach. A. to Declaration of Mark Keller).

Lt. Keller checked various boxes on the infraction review checklist and signed it. His job as an infraction reviewer was to ensure that the infraction was properly written. His job was not to determine if the inmate was guilty or not. *Id*. at 2. Lt. Keller states that his review of Mr.

ORDER - 3

>Holmberg's infraction was based entirely on his understanding of his role as an infraction reviewer and had nothing to do with whatever litigation or grievances Mr. Holmberg may have filed. *Id*. Mr. Holmberg was found not guilty of the 663 infraction at his disciplinary hearing. *Id*.

Dkt. 38 at 2-5.

### III.  DISCUSSION

**A.   R&R  Re: Drago, Fitzpatrick, Keller, and Van Boening**

In this case, Judge Strombom recommends that the Court grant Defendants' motion for summary judgment on all of Holmberg's claims except for his claim against Drago for retaliation.  Both Drago and Holmberg object to this recommendation.

**1.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. 42 U.S.C. 1983; First Amendment Retaliation

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

A claim of retaliation against a prisoner for the exercise of his First Amendment rights has five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

ORDER - 5

*Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005). "[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (citing *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)).

### 3. Holmberg's Claims

The first issue before the Court is whether Drago's issuance of the infraction chilled Holmberg's First Amendment rights. Judge Strombom found that, viewing the evidence in the light most favorable to Holmberg, a material question of fact existed on the issue of whether Drago's "conduct constituted retaliation for [Holmberg's] protected right to file lawsuits." Dkt. 38 at 14-15. Drago objects to this finding and argues that the "issuance of a truthful infraction report to an inmate, of which the inmate is subsequently found not guilty, would not have a chilling effect on the First Amendment activities of a person of ordinary firmness." Dkt. 40 at 4. The infraction, however, plainly states that Drago was intimidated by the statement that Holmberg was a "litigator" and had "three pending lawsuits." There is no indication that Drago was intimidated by the manner in which Holmberg made the statement. Moreover, there is no evidence that Holmberg implied that he would file suit against Drago. Viewing the infraction in the light most favorable to Holmberg, it is reasonable to find that Drago issued the infraction based solely on the content of Holmberg's statement. If Holmberg must contest an infraction and attend a grievance hearing whenever litigation is mentioned to a corrections officer, then his First Amendment rights would be chilled. Therefore, the Court adopts Judge Strombom's R&R on this issue.

The second issue before the Court is whether Keller's review of the infraction chilled Holmberg's First Amendment rights. Judge Strombom found that it was "undisputed that Lt. Keller's participation in the 663 infraction was simply to ensure that the infraction was properly written and not to agree with Officer Drago or determine Mr.

Holmberg's guilt." Dkt. 38 at 16. Holmberg objects to this finding and argues that Keller could have dismissed the infraction instead of delivering it to the grievance panel. Holmberg, however, has failed to show that Keller's review of the infraction either chilled Holmberg's exercise of his First Amendment rights or did not reasonably advance a legitimate correctional goal. The facts show that Keller's job was to review the infraction to ensure that it is based on facts and not to pass judgment on the propriety of the infraction. The Court agrees with Judge Strombom that Keller's purely administrative task does not support a claim of retaliation for the exercise of Holmberg's protected rights. Therefore, the Court adopts Judge Strombom's R&R on this issue.

**B     R&R Re: Lavagnino**

Judge Strombom recommends that the Court dismiss Holmberg's claims against Lavagnino for failure to prosecute because Holmberg has failed to serve Lavagnino. Dkt. 39. No party filed objections to this R&R. Therefore, having reviewed the R&R and the remaining record, the Court adopts the R&R and Holmberg's claims against Lavagnino are dismissed for failure to prosecute.

### IV.  ORDER

Therefore, it is hereby **ORDERED** that Judge Strombom's R&Rs (Dkts. 38 & 39) are **ADOPTED** and Defendants are entitled to **JUDGMENT** on all of Holmberg's claims except for Holmberg's retaliation claim against Drago.

DATED this 6th day of February, 2012.

BENJAMIN H. SETTLE
United States District Judge